Ivaylo Dodev,

c/o 6312 South 161st Way
Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Facsimile
dodev@hotmail.com

*Pro Per*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Bank of New York Mellon,**<br><br>　　　　　　**Plaintiff,**<br>v.<br>**Ivaylo Dodev,**<br><br>　　　　　　**Defendant.** | No. CV-17-02772-PHX-JJT<br><br>**BRIEF IN SUPPORT OF NOTICE OF REMOVAL (RE: ORDER, DOC. 6)**<br><br>**ORAL ARGUMENTS REQUESTED**<br><br>Honorable John J. Tuchi |

**COMES NOW,** Ivaylo Dodev ("Defendants") and submits hereto this brief regarding the amount-in-controversy in this instant matter, as Ordered [Doc. 6], with contemporaneous <u>request for leave</u> to include an additional two pages to his brief for this Court's consideration.

## I. SUPPORTING BRIEF

### a. Parties are Citizens of Different States

Defendant is a citizen of Arizona, in lawful possession of real property, with known address: 6312 South 161st Way, Gilbert, Arizona 85298 ("subject property").

---

1 | Brief in Support of Notice of Removal

The Bank of New York Mellon (the purported "Plaintiff"), a Delaware Corporation with registered address: One Wall Street, New York, NY, 10286, is a citizen of Delaware and New York, not Arizona, for purposes of diversity jurisdiction. Under 28 U.S.C. § 1332(c)(1), a corporation "shall be deemed to be a citizen of . . . the State where it has its principal place of business[1]." 28 U.S.C. § 1332(c)(1).

### b. The Action at Bar is Not a Straightforward Eviction

One of the salient points that Defendant asks this Court to take notice of is that this is not a summary eviction action under Arizona law, as this matter has already been adjudicated on the merits. *See* Notice of Removal incorporated herein by this reference. Moreover, Plaintiff filed this fourth eviction action in bad faith, aiming to secure a default judgment against Defendant by avoiding lawful service of process, while being barred from commencement of said action by the Prior Pending Action Doctrine.[2]

The third eviction action, dismissed in favor of Defendant, is still pending in regards to Motion to Sanction Counsel [CV2017-002670], and was, and still is, pending before the Arizona Court of Appeals when this untimely and barred by *res*

---

[1] In 2010, the Supreme Court held that a corporation's principal place of business is its "nerve center": "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). This will usually be "the place where the corporation maintains its headquarters." *Id.*

[2] In an action *in rem* or *quasi in rem,* the first court to acquire jurisdiction over the property has jurisdiction to the exclusion of the other. *Kline,* 260 U.S. at 229-31, 43 S.Ct. at 81-82; *Mach-Tronics, Inc. v. Zirpoli*, 316 F.2d 820, 833 (9th Cir.1963); *cf. Dowdy v. Calvi*, 14 Ariz. 148, 125 P. 873 (1912).

2 | Brief in Support of Notice of Removal

*judicata* action was commenced. *See* 1 CA-CV 17-0401. In support hereto, under L.R. Civ. 3.6(c), Defendant asks this Court to consider his—now fully briefed—Motion to Dismiss for Lack of Jurisdiction, filed in the Superior Court, Plaintiff's Response and Defendant's Reply, all attached under *Notice of Removal* and incorporated herein.

Defendant is in grave danger of losing real property to a party that does not claim any equitable interest in the Trustee's Deed.[1] Upon discovery, Defendant will prove that Plaintiff does not claim interest in the Deed, and therefore Counsel illicitly and maliciously filed this action. Defendant has already contacted alleged Plaintiff with a request to verify their interest in the subject property and Plaintiff denied such interest "After researching our database, we do not show any records of address(es) listed in your email." *See* Exhibit "A", attached hereto and incorporated herein.

Therefore, out of an abundance of caution, Defendant alleges that Counsel is moving to disposes him from the subject property, under a color of law, in the name of an unrelated and undisclosed third party, without being authorized by purported Plaintiff. (The name of the company may only be used as plaintiff by the direction of the company or its directors and [the] company's name will be struck out as plaintiff in any action instituted in its name without such authorization). *See La Compagnie De Mayville v. Whitley,* 1 Ch. 788 (Eng. 1896), as applied by Arizona Supreme Court in an En Banc decision, *see Gemstar Ltd. v. Ernst & Young,* 917 P. 2d 222 (Ariz. 1996).

---

[1] (Courts take judicial notice of records in the county recorder's office, but the authenticity thereof must be established by competent evidence.) *Murphey v. Gray,* 84 Ariz. 299, 327 P.2d 751 (1958).

3 | Brief in Support of Notice of Removal

### c. The Amount-in-Controversy Exceeds $75,000.00

Under the compelling facts stated above, Defendant is bound to lose the subject property, worth more than $75,000,[1] to a perhaps unrelated party if this Court does not accept jurisdiction and conduct discovery not allowed under RPEA. This allegation is <u>more than plausible</u> as the pervious law firm, moving under guise of the same purported Plaintiff, dismissed <u>the same eviction action</u> twice when the Superior Court granted Defendant's motion to compel and answer his subpoena requesting the power of attorney [engagement contract] between Counsel and purported Plaintiff. Answering the subpoena was going to disclose the real name of the party behind this illicit action, and therefore, counsel at the time chose to run for the exit in order to avoid legal prosecution.

Plaintiff is requesting <u>equitable and injunction relieve</u> in his complaint. There is no reason that an eviction action should be valued differently than other actions seeking injunctive or declaratory relief. In such actions, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)[2]. This argument is supported in *YA Landholdings, LLC v. Sunshine Energy, KY I, LLC.*

---

[1] See Maricopa County Public Record, County Assessor
[2] See *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 181, 56 S.Ct. 780, 781, 80 L.Ed. 1135 (1936); *Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co.*, 239 U.S. 121, 126, 36 S.Ct. 30, 32, 60 L.Ed. 174 (1915); *Hunt v. New York Cotton Exchange*, 205 U.S. 322, 336, 27 S.Ct. 529, 533, 51 L.Ed. 821 (1907); 1 J. Moore, Federal Practice PP 0.95, 0.96 (2d ed. 1975); C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure s 3708 (1976).

> Similarly, some courts have valued the amount in controversy in an action such as this as the amount that the defendant stands to lose if the plaintiff is successful. *See Sterl*, 88 F.Supp. at 432 (concluding that the amount in controversy was met where "[i]t is clear that what the defendant [tenant farmer] has at stake and stands to lose in this suit" exceeds the jurisdictional minimum for federal court); *see also Woodmen of the World*, 561 F.Supp. at 642 (considering the defendant's argument that an unfavorable decision would cause it to lose more than $200,000). In *Northup Properties, Inc. v. Chesapeake Appalachia, LLC,* in which the plaintiff landowners sought to declare an oil-and-gas lease null and void, the Sixth Circuit seems to have valued the amount in controversy as the defendant's "anticipated loss." 567 F.3d 767, 770 (6th Cir.2009).

871 F. Supp. 2d 650, 654 (E.D. Ky. 2012)

Claims for injunctive relief, however, present a special problem in establishing the amount-in-controversy necessary for diversity jurisdiction. A claim for injunctive relief or other equitable relief is, by definition, not a claim for a sum certain. Historically, injunctive relief was a creature of equity, a court system that existed in part because monetary relief for certain wrongs was not available. In the action at bar Counsel certifies that "[t]his case is not subject to Arbitration[1] because equitable relief is sought." *See* Exhibit "B" attached hereto and incorporated herein. Counsel's complaint acquiesces that the equitable relief sought is beyond the $50,000 limit.

Where the object of litigation is <u>equitable relief</u>, no such rough justice occurs upon a finding of liability, as the award is never reduced to a dollar amount. <u>Either the plaintiff gets the full benefit of a successful verdict and the defendant suffers its full</u>

---

[1] Mandatory program for disputes valued under $50,000, under Arizona law.

5 | Brief in Support of Notice of Removal

loss, or vice-versa. Accordingly, the economically "real" amount-in-controversy in equitable relief cases is the potential loss or gain of the entitlement of the party with the highest subjective valuation put into play by the litigation. *See Inman,* 261 F. Supp. at 708 ("When what a plaintiff stands to gain and what a defendant stands to lose are unequal and where federal jurisdiction is invoked by the party standing to gain or lose more than his adversary, the greater gain or loss should be applied as the criterion of jurisdictional amount.").

Furthermore, this Court needs to consider what Defendant is destined to spend defending himself[1] in this unripe for prosecution action, and the possible punitive damages[2] if he is found in lawful possession of the subject property, as part of the amount-in-controversy in order to reach the jurisdictional threshold. If punitive damages are available as a matter of law, a court must aggregate punitive and actual damages to determine whether an action meets the requisite amount in controversy. *See Bell v. Preferred Life Assurance Soc.,* 320 U.S. 238, 240 (1943) (reversing dismissal for lack of jurisdiction that failed to consider punitive damages) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.").

---

[1] *Bergstrom v. Burlington N.R.R.,* 895 F. Supp. 257, 259 (D.N.D. 1995) (finding value of injunctive relief met by combining defendant's $30,000 costs of compliance with amount of plaintiff's monetary damage claim).
[2] *Gibson v. Chrysler Corp.,* 261 F.3d 927, 945 (9th Cir. 2001) (citations omitted) ("It is well established that punitive damages are part of the amount in controversy in a civil action.").

## II. CONCLUSION

The Ninth Circuit allows the amount-in-controversy requirement to be met by viewing it from either the Plaintiff's or the Defendant's perspective. The federal courts have long relied on the "either viewpoint" rule to assess the amount-in-controversy when determining jurisdiction. *See Smith v. Adams,* 130 U.S. 167, 175, 9 S.Ct. 566, 32 L.Ed. 895 (1889) ("[T]he pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed ... but in some cases ... by the pecuniary result to one of the parties immediately from the judgment."); *In Re Ford Motor Co./ Citibank,* 264 F.3d 952, 959 (9th Cir.2001) ("Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce."). The rule is usually applied in cases where the **Plaintiff pursues an equitable remedy**. It can be difficult to place a monetary value on the proposed remedy when it is viewed from the perspective of the plaintiff, but relatively straightforward to ascertain the cost to the defendant of complying with the remedy. *See Packard v. Banton,* 264 U.S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596 (1924) ( "The object of the suit is to enjoin the enforcement of the statute, and it is the value of this object thus sought to be gained that determines the amount in dispute."); *Mississippi & M.R. Co. v. Ward,* 67 U.S. 485, 492, 2 Black 485, 17 L.Ed. 311 (1862) (In suit to abate a public nuisance, "the removal of the obstruction is the matter of controversy, and the value of the object must govern."). The rule has thus come to be associated almost exclusively with **cases seeking injunctive**

**relief**. *See Ford Motor Co.*, 264 F.3d at 958; *Zator v. Sprint/United Mgmt. Co.*, No. 09cv2577–LAB, 2011 WL 1168319, at *1 (S.D.Cal. Mar. 29, 2011).

Therefore, considering that this matter is adjudicated on the merits under ARCP Rule 41(a)(1)(B) [Notice of Removal], this Court has jurisdiction under 28 U.S.C. § 28-1331. See *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994): "Federal common law as articulated in rules that are fashioned by court decisions are 'laws' as that term is used in § 1331." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (jurisdiction upheld). Further, under the cornucopia of case law cited herein above the threshold of the amount-in-controversy is met as Plaintiff is seeking equitable and injunctive relief.

**WHEREFORE**, Defendants respectfully request that this Court will accept jurisdiction and proceed with this matter.

Respectfully submitted on this 28 day of August, 2017.

*/s/ Ivaylo Dodev/*
**Ivaylo Dodev**, Defendant in *Pro Per*
c/o 6312 South 161st Way, Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Fax

8 | Brief in Support of Notice of Removal

## CERTIFICATE OF SERVICE

**ORIGINAL** and **ONE COPY**, are hand-delivered to The United States District Court for the District of Arizona this 28 day of August, 2017.

**FURTHER,** Counsel for Plaintiff is CM/ECF filer and will be served by and through the court's docket.

**FURTHER,** a copy of the foregoing is electronically mailed to Counsel for Plaintiff Ross Mumme, this 28 day of August, 2017.

_____
By, Ivaylo Dodev
6312 South 161st Way, Gilbert, Arizona
(480) 457-8888 Phone
(480) 457-8887 Fax

# Exhibit A

Thank you for prompt response.
The property older address was:
23410 S. 161st Way,
Gilbert, AZ 85297
Perhaps it is under this one.
Please see the attached NTS that lists you as a beneficiary.
Regards,
Ivaylo Dodev

From: MBS.Property.Inquiries@BNYMellon.com
Sent: Friday, April 22, 2016 6:36 AM
To: Ivaylo Dodev
Subject: Re: Mortgage Verification

Thank you for your recent correspondence.

After researching our database, we do not show any records of the address(es) listed in your email. If you have documents showing we are the Trustee, please send it to this mailbox so it can be researched further. All applicable documents should be sent to me via email. However, please note that BNY Mellon is solely the trustee and any property preservation, release, assignment, etc. would be handled by the applicable servicer. If you know the applicable servicer, please contact them directly. If not, please send any documentation you have showing BNY Mellon as trustee so that we can direct your email to the appropriate party.

Thank you for contacting BNY Mellon.

**BNY Mellon Property Inquiries**
Global Corporate Trust – Mortgage Backed Securities • Phone 800.269.6776

**Mortgage Verification**

Ivaylo Dodev            to:    MBS.Property.Inquiries                                04/21/2016 07:00 PM

# Exhibit B

1  ⟮This case is not subject to Arbitration because equitable relief is sought.⟯
2
3       DATED July __10th__, 2017
4                    **McCARTHY HOLTHUS, LLP**
5
6                    _____
                     Ross M. Mumme
7                    8502 East Via De Ventura, Suite 200
                     Scottsdale, Arizona 85258
8                    *Attorneys for Plaintiff*
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

AZ-17-117782

2